Douglas W. Robert, Respondent (Plaintiff), v. Joseph T. Davis, Appellant (Defendant).—142 S. W. (2d) 1111.

St. Louis Court of Appeals. Opinion filed Sept. 11, 1940.

*M. G. Baron, E. W. Fredrickson, Victor A. Wallace* and *Joseph T. Davis* for appellant.

*Richard T. Brownrigg* for respondent.

*Douglas W. Robert, Pro Se.*

BENNICK, C.—This is a suit between two attorneys relative to the division and payment of a fee for professional services rendered by such attorneys in connection with a controversy and ensuing litigation between one Edward F. Goltra, of the City of St. Louis, and the War Department of the United States Government, over the cancellation of a lease by which certain boats and barges had been leased to Goltra by the War Department in 1919.

In his petition, plaintiff alleged that in March, 1923, he and defendant were jointly employed by Goltra to prosecute a suit to restrain certain officials of the United States Government from interfering with Goltra's possession of the boats and barges in question; that he and defendant, together with one Charles Claflin Allen, also an attorney-at-law, did jointly prosecute said litigation up to a point in December, 1923, when the Supreme Court of the United States denied a writ of prohibition which had been sought by the Government; that at said time Goltra paid to each of the three attorneys the sum of $1,000 for legal services rendered up to that point; and that at that time Allen withdrew from any further connection as an attorney in the case.

It was further alleged that following Allen's withdrawal from the case, plaintiff and defendant continued to prosecute said litigation jointly, and to its final conclusion, in the United States District Court for the Eastern Division of the Eastern Judicial District of Missouri, the United States Circuit Court of Appeals for the Eighth Circuit, and the Supreme Court of the United States; that thereafter plaintiff and defendant were desirous of having an agreement with Goltra as to the fee to be paid for the professional services of plaintiff and defendant; that it was agreed between plaintiff and defendant that, owing to the fact that defendant was acting as attorney for Goltra in other legal matters, and was his general counsel, defendant should alone conduct the negotiations with Goltra for such agreement, with full authority to act for both plaintiff and defendant with respect to the amount of the fee, the terms of payment, and the collection of the money from Goltra; and that plaintiff was to abide by the amount and terms of any agreement reached.

Plaintiff then alleged that he had no information as to the amount of the fee agreed upon between defendant and Goltra, save for information given him orally by defendant, and charged the fact to be, upon the basis of such information, that in April, 1926, defendant entered into an agreement with Goltra whereby Goltra agreed to pay

for legal services jointly performed by plaintiff and defendant after December, 1923, the sum of $35,000, the same to be paid in installments, with each installment evidenced by a promissory note executed by Goltra and made payable to defendant; that such notes were thereafter delivered by Goltra to defendant; and that plaintiff had never been informed by defendant of their respective terms, although he had often requested such information from defendant.

It was then alleged that it was agreed between plaintiff and defendant that such sum of $35,000 was satisfactory as a fee for their services; that plaintiff and defendant should each receive one-half of such sum; and that in compliance with such agreement, defendant paid to plaintiff the sum of $3,000 as his one-half of the total amount of $6,000 collected by defendant from Goltra between April, 1926, and September, 1926.

Plaintiff further alleged that thereafter, in October, 1928, plaintiff and defendant agreed that of the remaining sum due from Goltra, defendant should have fifty-five per cent, and plaintiff, forty-five per cent; and that between October, 1928, and October, 1931, Goltra paid to defendant the total amount of $20,600, of which defendant in turn paid plaintiff the sum of $9,770.

Plaintiff then alleged that there was due him fifty per cent of all sums, if any, collected by defendant from Goltra prior to October, 1926, over and above the sum of $6,000, and forty-five per cent of all sums, if any, collected subsequent to October, 1926, over and above the sum of $20,600; that defendant had informed plaintiff that some of the notes executed by Goltra had not been paid at maturity, and that Goltra had executed new notes for and in the place of those not paid; that defendant, though often requested to do so, had refused to give plaintiff any information as to the number and terms of such renewal notes; and that plaintiff had often demanded an accounting from defendant, which defendant had invariably refused.

Plaintiff then alleged that he was informed and believed, and hence charged on information and belief, that defendant had received from Goltra further sums of money, in amounts unknown to plaintiff, in addition to the sums reported to plaintiff by defendant. He concluded with the allegation that he had no adequate remedy at law.

Plaintiff prayed, among other things, that defendant be required to account to him for all of the notes executed by Goltra, and for all money received from Goltra, on account of the agreement for legal services; and that the court render judgment in his favor for fifty per cent of all sums of money paid by Goltra prior to October, 1926, and for forty-five per cent of all money paid subsequently, in excess of the sums theretofore reported to plaintiff by defendant.

Defendant answered by a mere general denial.

The court found, in its decree, that plaintiff and defendant had been jointly employed by Goltra to prosecute the litigation in question; that each of them was paid $1,000 by Goltra for services rendered up to December, 1923; that thereafter defendant entered into negotiations with Goltra, which resulted in an agreement to pay plaintiff and defendant for their joint services subsequent to December, 1923, the sum of $35,000, said sum to be paid in installments, and each installment to be evidenced by a promissory note executed by Goltra and delivered to defendant; that it was agreed between plaintiff and defendant that such agreement was satisfactory, and that plaintiff and defendant should each receive one-half of the fee; that thereafter plaintiff and defendant modified their agreement, so that plaintiff became entitled to receive forty-five per cent, and defendant, fifty-five per cent, of all sums subsequently collected from Goltra; that the full amount of the fee had been paid by Goltra to defendant; and that after an accounting was had, to which plaintiff was entitled under the facts, defendant was indebted to plaintiff in the aggregate amount, including both principal and interest, of $4,786.26, for which amount the court entered judgment in plaintiff's favor.

From the judgment so entered, defendant's appeal to this court has been perfected in the usual course.

As to the important facts of the case, both plaintiff and defendant are in substantial accord, and such dispute as exists is obviously to be attributed either to misunderstanding or to honest mistake.

For some years prior to plaintiff's employment in the Goltra case, he and defendant, together with Judge CHARLES CLAFLIN ALLEN, had been office associates in a common suite, sharing office space and expenses, but in no sense constituting themselves partners in the practice of their profession. On the contrary, each had his own clients and business, though as is ordinarily the case with such an association of lawyers, it was the custom and practice for any one or more of them, acting purely as an accommodation and without expectation of compensation, to aid and assist any other one of the group in incidental or routine matters which might demand immediate attention while he was out of the city or otherwise engaged.

Among defendant's clients was Goltra, whom he had represented for many years in connection with any and all legal matters with which Goltra might be concerned. Both plaintiff and Judge Allen had some degree of acquaintance with Goltra from having seen him in the office almost daily for his conferences with defendant, but neither of them had ever purported to represent him in any professional capacity.

For some two years defendant had been in frequent consultation with Goltra relative to the controversy between Goltra and the War Department with respect to the boats and barges theretofore leased

by the Government to Goltra for use upon the Mississippi River. As already pointed out, the Government was demanding the cancellation of the lease and the surrender of the boats and barges to it, while Goltra, for his part, was resisting the Government's right to terminate the lease and seize the boats and barges.

Early in March, 1923, defendant informed plaintiff of the Goltra matter, and stated that there was to be a conference in the office of the local United States District Attorney with certain army officers who were coming to St. Louis with a view to the enforcement of their demand for the surrender of the boats and barges. Defendant advised plaintiff that he would be compelled to be out of the city at the time of the proposed conference, and requested plaintiff to attend the conference in his stead, which plaintiff did as a matter of courtesy to defendant.

Following the conference, plaintiff advised defendant of the attitude of the Government officials, and on account of the apparent likelihood that those officials might suddenly attempt the seizure of the boats and barges by force, suggested to defendant that a rough draft of a bill for an injunction be prepared for use in such an eventuality. Defendant accepted such suggestion, and Judge ALLEN, who happened not to be particularly busy at the time, was called in to prepare the bill, which, after its preparation, was turned over to defendant to await any necessity for its filing.

On Sunday, March 25, 1923, while defendant and Goltra were both in New York City, plaintiff received a telephone call from Goltra's son in St. Louis, advising him that the Government officials were arbitrarily seizing the boats and barges. Seemingly the son had been told by defendant to get in touch with plaintiff in the event of such a happening, and defendant himself shortly called plaintiff from New York City, requesting that plaintiff and Judge ALLEN complete the preparation of the bill, and apply for the injunction as had been orignially contemplated. Defendant also advised plaintiff that when the petition was filed, the signatures of defendant, plaintiff, Judge ALLEN, and a firm of Washington attorneys, should all appear upon it as counsel in the case.

In compliance with such advice, plaintiff summoned Judge ALLEN and then went with him to call upon the United States District Judge, whom they consulted about the matter, and who advised them that he would grant them their relief if the petition was in proper form. They then completed the petition by the addition of appropriate allegations of the overt acts complained of; filed the same; secured the issuance of a temporary restraining order upon the giving of a bond for which defendant had arranged before his departure from the city; and secured service of the order upon the parties named as defendants to the suit before the boats and barges could be removed from the territorial jurisdiction of the court.

Goltra, incidentally, was apprised of defendant's call to plaintiff from New York, and while not present at the time of the conversation, nevertheless accepted plaintiff's services in his behalf.

Following the return of defendant and Goltra from New York City, plaintiff participated with defendant in the prosecution of the suit, which ran the gamut of numerous hearings on motions in the District Court; a prohibition proceeding in the Supreme Court of the United States; a trial in the District Court upon the issue of whether Goltra should have an injunction; an appeal to the United States Circuit Court of Appeals for the Eighth Circuit from the order granting the injunction; *certiorari* to the Supreme Court of the United States following the reversal of the order granting the injunction; and the preparation and filing of a motion for rehearing upon the decision of the Supreme Court quashing the writ.

In all the litigation, plaintiff concededly rendered valuable services in connection with consultations and the preparation of briefs and the like, and participated in all hearings, save that in the *certiorari* proceeding in the Supreme Court of the United States. Goltra was likewise at all times present, availing himself of plaintiff's services as his attorney; and the reason that plaintiff did not participate in the argument of the *certiorari* proceeding in the Supreme Court was that Goltra had requested that he not do so upon the assumption that defendant would be able to handle the matter alone. Apparently plaintiff's last participation in the litigation came on November 7, 1926, when, following the overruling of the motion for a rehearing in the Supreme Court, the case was dismissed in the District Court.

According to defendant, in March, 1926, shortly prior to the argument of the *certiorari* case in the Supreme Court, Goltra had inquired of him why it would be necessary to continue plaintiff in the case any longer, and when Goltra's wish was transmitted to plaintiff, the latter ceased further active connection with the case, save for whatever services he was called upon to perform between the rendition of the adverse decision in the Supreme Court and the ultimate dismissal of the case in the District Court.

Early in January, 1924, plaintiff suggested to defendant that they should be paid a retainer, and was told by defendant that he had already spoken to Goltra about the matter. Subsequently plaintiff met Goltra on the street, and was advised by Goltra that in a conversation he had had with Judge ALLEN, the latter had stated that the payment of a fee of $1,000 would be satisfactory for all work done up to that time. Both plaintiff and defendant had desired a payment to them in the nature of a retainer, but in view of Judge ALLEN's agreement with Goltra, felt compelled to abide by it, and consequently each accepted the sum of $1,000 as payment in full for services rendered up to that point in the litigation, or at least plaintiff's evidence so disclosed. This seems to have been the first occa-

sion for any ill feeling between the three associates, and with this payment made, Judge ALLEN ceased all participation and withdrew. from any further connection with the case.

It was conceded that early in 1926, defendant arranged with Goltra for the payment of a fee of $35,000 for his and plaintiff's services in the case, the only dispute being as to whether Goltra was to be given a deduction of $2,000 for the sums paid to plaintiff and defendant in January, 1924, for services rendered up to that time. It was also conceded that Goltra gave defendant a series of notes to evidence a large portion of his indebtedness to defendant, although the record is not without dispute as to what the terms of the notes were, or whether they represented more than the fee due in the case in which plaintiff was engaged. Plaintiff likewise testified to the making of the agreement in 1928 for him to be paid forty-five per cent, and defendant, fifty-five per cent, of all sums collected by defendant from Goltra subsequent to October, 1926, while defendant, for his part, took the position that he and plaintiff had never come to any definite agreement as to the compensation that plaintiff should receive, but that instead he had at all times merely expected to pay plaintiff a reasonable compensation out of such compensation as he himself was able to collect from Goltra.

As a matter of chief insistence, defendant argues that the case presents no ground or basis for the exercise of equitable jurisdiction, and that consequently the court should have entered a decree dismissing plaintiff's bill.

It is of course true that a demand for an accounting, however complicated the accounts, and however great the need for a discovery, will not lie as the sole ground for invoking the jurisdiction of equity, and that before the plaintiff may be accorded an accounting, there must be shown the existence of a fiduciary or trust relationship between the plaintiff and the defendant, which, for want of an adequate legal remedy, will serve as the foundation for equitable jurisdiction in the particular case. [Dahlberg v. Fisse, 328 Mo. 213, 40 S. W. (2d) 606; State ex rel. v. Southern, 229 Mo. App. 749, 83 S. W. (2d) 162; Johnston v. McCluney (Mo. App.), 80 S. W. (2d) 898; Bennett v. Crane, 220 Mo. App. 607, 289 S. W. 26; Boden v. Johnson, 226 Mo. App. 787, 47 S. W. (2d) 155; Palmer v. Marshall (Mo. App.), 24 S. W. (2d) 229.]

What defendant challenges in this case is the contention that he and plaintiff were special partners, jointly employed by Goltra to prosecute the litigation attending the attempted arbitrary seizure of the boats and barges leased to Goltra by the Government. Defendant argues that the evidence did not support the allegation and finding of such joint employment, but that, on the contrary, the only relationship shown to have existed between defendant and plaintiff was that of employer and employee, which, if true, could

have afforded no ground for sustaining an equitable suit for an accounting.

The law is that where an attorney retained in a case employs or procures the employment of another attorney to assist or serve with him in the conduct of the litigation in which they are to be engaged, then, as regards the division of the fee, the undertaking constitutes a joint adventure or special partnership between them; and where one of the two attorneys thus jointly employed collects the entire fee from the client, he is liable, and must account to the other attorney for the latter's proportionate share of the money paid. [7 C. J. S., Attorney and Client, sec. 174.]

The above seems to fit this case in all material respects. The evidence shows that while plaintiff was brought into the case at the instance and invitation of defendant, he served only at the pleasure and with the consent of Goltra, who, in impliedly ratifying his employment, not only reserved to himself, and to some extent exercised, the right to control the details of plaintiff's activities, but also ordered or directed plaintiff's discharge when he finally came to the conclusion that the necessities of the situation did not warrant the additional expense of plaintiff's further retention in the case. The first payment plaintiff received for his services came directly from Goltra himself, and there is nothing to indicate that plaintiff's subsequent work as an attorney in the case was either done or accepted upon any different basis from that which had obtained following Goltra's initial ratification of his employment. Plaintiff's name invariably appeared on all papers and briefs as one of the attorneys representing Goltra, and while this might not be a controlling circumstance, it is nevertheless a factor to be considered in determining what his actual *status* was. Moreover, it is significant that in written communications between defendant and Goltra regarding payment of the fee and other matters, defendant himself specifically recognized plaintiff's joint employment with him in the case, for which plaintiff's compensation was to come from Goltra in accordance with the fee agreement made.

Under all the evidence, we cannot escape the conclusion that plaintiff successfully sustained his burden of showing a special partnership between himself and defendant in respect to the conduct of the Goltra litigation; and this being true, and with defendant having undertaken the task of the collection and distribution of the fee, there was shown the essential fiduciary relationship, which, so long as the two of them were unable to agree upon a settlement as between themselves, served to warrant plaintiff's demand for an equitable accounting from defendant.

Defendant insists, however, that regardless of the relation existing between him and plaintiff, the court in any event permitted prejudicial error against him in undertaking to enter a money judgment in

plaintiff's favor without having first entered up an interlocutory decree merely adjudicating plaintiff's right to have an accounting.

It is held to be the proper practice in suits of this character, where, as here, the plaintiff's petition stands denied, for the court first to determine the basic question of the plaintiff's right to an accounting, after which, if the finding has been in the plaintiff's favor upon such preliminary issue, the accounting may then be had in accordance with the terms and conditions of the interlocutory decree directing the defendant to account. [Buffington v. Green, 221 Mo. App. 695, 285 S. W. 531; Dahlberg v. Fisse, *supra;* 1 C. J. S., Accounting, sec. 40; 1 Am. Jur., Accounts and Accounting, sec. 61.]

This for the very good and sensible reason that if an accounting is to be had, it must necessarily be based upon facts and figures irrelevant in most part to the question of the plaintiff's right to demand an accounting, so that, because of the obvious difference in the nature of the two proceedings, it would be unfair and unjust to require the defendant to put himself to the trouble and expense of preparing for an accounting until after his liability to account had first been judicially established.

In this case, in the course of the preliminary statements of counsel to the court, it was distinctly and specifically agreed that the evidence offered should be limited and restricted to the issue of plaintiff's right to have an accounting, but before the case had progressed very far, both plaintiff and the court saw fit to disregard such initial understanding. It is true, as plaintiff points out, that in subsequent stages of the case defendant likewise introduced certain evidence which related purely to the state of the account between himself and plaintiff. This was not done, however, until after his counsel had unavailingly objected to the scope already taken and about to be taken by plaintiff's evidence; and having been forced by the adverse ruling of the court to defend against an issue which should not have been injected into the case, the fact that defendant himself thereafter introduced a measure of countervailing evidence upon such issue did not amount to a waiver on his part, or preclude him, having duly saved the point in his motion for a new trial, from now insisting that the court committed error in purporting to state the account and render a money judgment against him. [Davenport v. Silvey, 265 Mo. 543, 551, 178 S. W. 168; McKee v. Rudd, 222 Mo. 344, 371, 121 S. W. 312; Bailey v. Kansas City, 189 Mo. 503, 513, 87 S. W. 1182; State ex rel. v. Blobeck Investment Co., 233 Mo. App. 858, 110 S. W. (2d) 860.]

Could we be convinced, as plaintiff would have us be, that no detriment resulted to defendant from the fact that the court, notwithstanding the settled rule of practice and the agreement of the parties to the contrary, undertook to state the account as well as to determine the question of plaintiff's right to an accounting, we would

necessarily be obliged to say that the error was harmless, but unfortunately such is not the case. As the record comes to us, with the evidence upon the two issues intermingled throughout, it is impossible to ascertain with any reasonable degree of accuracy what the precise balance due plaintiff may be, and we have noted no evidence at all to support the court's finding that the entire fee had been liquidated as of October 31, 1931, from which date interest upon the unpaid balance was made to run. While it is true that defendant, although expecting the trial to be restricted to the issue of plaintiff's right to an accounting, was nevertheless able to offer some evidence upon the question of the items of the account, we cannot say that he offered all evidence available to him under proper procedure, or that such additional evidence as he may have might not conceivably reduce the amount of his liability. At any rate, he has not as yet had his full and proper day in court beyond the issue as to whether there should be an accounting in the case, and he is therefore not to be concluded by the court's premature finding upon the question of the balance due to plaintiff.

The disposition to be made of the case in the light of the error found to have been committed obviates the necessity of passing upon other assignments of error not adverted to in connection with points specifically determined.

The Commissioner accordingly recommends that the judgment rendered by the circuit court be reversed and the cause remanded with directions to the circuit court to enter up an interlocutory decree directing the defendant to account to plaintiff upon the terms and conditions of the agreement and subsequent modification thereof found to have been entered into between plaintiff and defendant with respect to their respective proportionate shares of the amount of the fee collected, to be in turn followed by the taking of the account, at the conclusion of which the court shall render such final decree as may then appear to be right and proper.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded in accordance with the recommendations of the Commissioner. *Hughes, P. J.,* and *McCullen, J.,* concur; *Becker, J.,* not sitting because absent at time cause was submitted.