**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert W. FOULK,
Defendant-Appellant.**

No. 49624.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 13, 1987.

Motion for Rehearing and/or Transfer
Denied March 4, 1987.

Application to Transfer Denied
May 19, 1987.

William L. Webster, Atty. Gen., Paul LaRose, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Daniel J. Pingelton, Columbia, for defendant-appellant.

SIMON, Judge.

Defendant, Robert W. Foulk, was found guilty of rape, § 566.030 RSMo 1978 and sodomy, § 566.060 RSMo 1978, at the conclusion of a jury trial in the Circuit Court of Cape Girardeau County. (All further references will be to RSMo 1978 unless otherwise noted.) Pursuant to the jury's verdict, defendant was sentenced to a term of ten years for each offense to be served consecutively.

Defendant contends the trial court erred in: (1) denying his offer of evidence of prior sexual contacts between himself and the complainant; (2) denying his motion for individual or group voir dire; (3) sustaining the state's objection to his cross-examination of a state witness concerning the complainant's reputation for truth and veracity; (4) denying his motion to endorse two defense witnesses to impeach the complaining witness; (5) sustaining state's objection to questions asked of a defense witness concerning his observations of prior injuries to complainant similar to those attributed to defendant; (6) overruling his objection and motion for a mistrial over questions to a state witness regarding whether the witness had mentioned a "burglary" to defendant during police interrogation; (7) allowing into evidence a letter he wrote from jail which indicated a plan of escape; (8) allowing the state to use letters written by him to the complainant for purposes of impeaching defendant; (9) restricting voir dire by not allowing him to question the panel regarding areas of reasonable doubt, burden of proof or presumption of innocence. We affirm.

As the sufficiency of the evidence is not challenged by defendant, the pertinent facts will be discussed insofar as required to resolve defendant's points.

In point one, defendant does not deny engaging in sexual acts with the complainant, his mother. He alleges the acts were consensual and contends that the trial court erred in sustaining the state's motion in limine which precluded defendant from introducing evidence of a prior act of consensual sexual intercourse between himself and his mother in 1979 and sexual advances by his mother towards him in 1981 and 1982.

Defendant recognizes that such evidence is presumed irrelevant under § 491.015, the "Rape Shield Law" unless it falls within one of the exceptions. *State v. Brown*, 636 S.W.2d 929, 933 (Mo. banc 1982). Section 491.015 provides in pertinent part:

1. In prosecutions for the crimes of rape, attempt to commit rape, or conspiracy to commit rape, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent and the evidence is reasonably contemporaneous with the date of the alleged crime; or

(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

(3) Evidence of immediate surrounding circumstances of the alleged crime; or

(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

In the instant case, defendant relies upon § 491.015.2 in arguing that his proffered testimony should have been admitted into evidence. A careful reading of subsection 2 of § 491.015 would seem to indicate that in order for evidence of prior sexual conduct to be admissible thereunder, the trial court must first find such "evidence relevant to a material fact or issue" under the enumerated exceptions listed in § 491.015.-1(1)–(4). *See* Comment, Interpreting Missouri's Rape Victim Shield Statute, 53 U.M. K.C. L.Rev. 273, 289 (1985). *See also* Amburg & Richtin, Rape Evidence Reform in Missouri: A Remedy for the Adverse Impact of Evidentiary Rules on Rape Victims, 22 St. Louis U.L.J. 367, 376 (1978). However, our Supreme Court had read subsection 2 of § 491.015 as a "catch-all" provision. Subsection 2 "allow[ed] introduction of *any* evidence" which the trial court finds relevant to a material fact or issue, independent of its relationship to the specific exceptions listed in § 491.015.1(1)–(4).

*Brown,* 636 S.W.2d at 933. (emphasis ours).

This view has since been repudiated. In *State v. Jones,* 716 S.W.2d 799 (Mo. banc 1986), our Supreme Court determined that evidence of specific instances of a rape victim's prior sexual conduct is admissible only when it falls within the specific exceptions contained in § 491.015.1(1)–(4) *and then* only to the extent that the trial court finds it relevant to a material fact or issue under § 491.015.2. *Id.* at 800.

In accordance with § 491.015.3, defendant made the required offer of proof as to what his testimony would have been. Defendant testified that in March of 1979, he had consensual sexual intercourse with his mother; that in May of 1981, his mother attempted to seduce him but he refused; and that in June of 1982 his mother attempted to seduce him again but he refused. The fact that a rape victim has engaged in consensual sexual relations with the defendant in the past under similar conditions may have some logical relevance to the question of consent. *Brown,* 636 S.W.2d at 934 (quoting *United States v. Kasto,* 584 F.2d 268, 271–72 (8th Cir. 1978). Clearly, these specific instances of the complainant's alleged prior sexual conduct are relevant in this situation involving a mother and her son.

Relevant as the prior conduct may be, however, it is not admissible unless it falls within an exception contained in § 491.015.1. Here the prior conduct does not. The only exception that is arguably applicable is § 491.015.1(1), which permits evidence of prior sexual conduct between the complaining witness and defendant to be admitted to prove consent, *provided the evidence is reasonably contemporaneous with the date of the alleged crime.* The trial court specifically found that the alleged prior conduct too remote under § 491.015.1(1) to be admissible. We agree.

The alleged forcible rape and sodomy occurred the evening of June 1, 1984. The alleged prior conduct occurred between five and two years before. In *State v. Crisp,* 629 S.W.2d 475 (Mo.App.1981), the date of the alleged crime was October 5,

1979. The defendant offered evidence of the complaining witness' prior sexual conduct with defendant that occurred approximately three years prior. The trial court ruled that the proffered evidence was not reasonably contemporaneous and excluded it. The court of appeals affirmed reasoning:

> Reasonably means within the bounds of common sense. Contemporaneous means originating, or happening, during the same period of time. It is not common sense to say that events that happened almost three years apart were reasonably contemporaneous. *Crisp,* 629 S.W.2d at 479.

This rationale was approved in *Jones. Jones,* 716 S.W.2d at 801. Additionally, we must examine whether, under the circumstances, the accused was deprived of a fair trial by the exclusion of the evidence. *Id.* In *Jones,* the defendant offered evidence of having consensual sexual intercourse some three and one-half to four and one-half months before the date of the offense charged. Our Supreme Court affirmed the exclusion of the evidence as not reasonably contemporaneous with the date of the alleged crime. The court noted that had the case merely involved a swearing match between the complainant and the defendant, it would have been inclined to reverse and remand for new trial. However, because the complainant's testimony was corroborated with medical testimony, the court concluded that defendant was not deprived of a fair trial. *Id.* 801–02.

Although this factual situation is unusual and shocking, we are bound by the *Jones* holding. The instant case is not a mere swearing match. The complaining witness' testimony was corroborated by medical testimony. On June 2, 1984, at approximately 4:30 A.M. on the morning after the alleged rape and sodomy, complainant was admitted and examined at St. Francis Hospital. Dr. John E. Kasukonis, Jr., the examining physician, testified that during the course of the examination he found widespread bruising about complainant's face, back, arms, and her external

genitalia, and that there were internal abrasions of her vagina. Dr. Kasukonis testified that the bruising and abrasions of the genitalia was indicative of violent sexual activity and were consistent with the forcible insertion of the penis into a dry vagina. Dr. Kasukonis testified further that the bruises about complainant's face were symptomatic of being struck by a blunt object such as a fist and that the bruises on her shoulder and arms were indicative of a "forceful grasp" or "pinching type movement." We conclude, as in *Jones*, that in these circumstances the trial court did not abuse its discretion nor was defendant deprived of a fair trial. Point denied.

In defendant's second point he contends the trial court erred in denying appellant's motion for individual or, in the alternative, small group voir dire. The trial court permitted defendant to examine the panelists row by row and follow up on individual responses. Our standard of review has been established by our Supreme Court in *State v. Smith*, 649 S.W.2d 417, 428 (Mo. banc 1983), *cert. denied* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246.

The purpose of voir dire is to enable each party to participate in selection of a fair and impartial jury and to that end, wide latitude is allowed in examination of the panel. *State v. Lumsden*, 589 S.W.2d 226, 229 (Mo. banc 1979). During voir dire the defendant should be permitted to develop not only facts which might manifest bias and form the basis of a challenge for cause, but also such facts as might be useful to him in detecting the possibility of bias and intelligently utilizing his peremptory challenges. *State v. Brown*, 547 S.W.2d 797, 799 (Mo. banc 1977); *State v. Thompson*, 541 S.W.2d 16, 17 (Mo.App.1976). Nevertheless, the examination of jurors as to their qualifications is conducted under the supervision of the trial court and the nature and extent of the questions counsel may ask are discretionary with that court. *State v. Lumsden*, 589 S.W.2d 226, 229 (Mo. banc 1979). Rulings of the trial court during voir dire will be disturbed on appeal only when the record

shows an abuse of discretion, *State v. Lumsden*, 589 S.W.2d at 229, and a real probability of injury to the complaining party. *State v. Olinghouse*, 605 S.W.2d 58, 68 (Mo. banc 1980).

Defendant argues his requested voir dire procedure was necessary because of the particular facts of this case. Defendant reasons that because this case concerned sexual acts between a son and his mother, some jurors would be too inhibited to respond to questions regarding whether they could separate their biases, prejudices and moral convictions from their legal duty to apply the law to the facts, and render a fair judgment. Consequently, defendant argues that private or small group voir dire alone would have provided defendant with the proper setting to ferret out possible bias or prejudice of panel members toward the defendant.

Defendant contends that on four occasions the "back row" of the venire panel was asked whether any one of them would be unable to act impartially. No one responded. After several exchanges involving non-sexual issues, and only after personal prodding panelist McDaniel responded. The exchange:

DEFENSE COUNSEL: Ms. McDaniel, could you be fair and impartial based on everything that we have been talking about so far?

PANELIST MC DANIEL: I think I could.

DEFENSE COUNSEL: Is there something that rubs you the wrong way or would make it difficult for you to be fair and impartial if selected?

PANELIST MC DANIEL: No, I think I would have to weigh the evidence and all. It's just that rape cases are a little you know—rape itself is hard. I am little nervous about it, you know, but I would try to weigh the evidence and try to be fair, yes.

We do not find responses of Ms. McDaniel as evidence of the unwillingness of venirepersons to speak up. Defendant makes much of the four times he questioned the back row regarding their ability to act im-

partially, each time being met with silence. He points to McDaniel as an example of someone who was too inhibited to speak up. The reason McDaniel did not answer when her row was addressed is revealed in her answer upon direct questioning during which she answered that she could be fair and impartial. Therefore, she had no reason to speak up when her row was examined as a group. Furthermore, McDaniel testified in open court that the facts of the case would have some effect upon her, but would not control her capacity to act fairly. McDaniel's testimony does not reveal a reluctance to speak openly in court regarding the sensitive issues involved in this case. It does not demonstrate inhibition, which defendant contends was so pervasive among the panel.

After carefully examining the record, we find only one other exchange during voir dire that tends to support defendant's claim that panel members were too inhibited to speak in open court because of the particular facts of the case.

DEFENSE COUNSEL: Mr. Hahn (the prosecutor) has mentioned, and I guess there is no use in my sidestepping this one to begin with, has mentioned that this case involves an act of sexual intercourse between a woman, Nancy Webb, and her son, Robert Foulk. Is there anyone, with just that smattering of facts, that feels inhibited in this large courtroom, in front of people we don't even know, sitting next to people we will probably never see again, does anyone feel so inhibited that they can't raise their hands and speak up in open court? Is there anyone who feels that way?

Ms. Boren, I happen to note, Ma'am, when Mr. Hahn was questioning, that you were looking around to see if anybody was going to raise their hand. Do you feel, Ma'am, somewhat inhibited by discussing these very delicate matters in open court in mixed company?

PANELIST BOREN: Yes.

DEFENSE COUNSEL: Does anyone else feel as Ms. Boren does? Does anyone else feel as Ms. Boren does that this is a difficult matter; it would be difficult to express your true feelings in a courtroom setting such as this?

(Panelist Grossheider raised her hand.)

DEFENSE COUNSEL: Okay, Mrs. Grossheider?

PANELIST GROSSHEIDER: Yes.

DEFENSE COUNSEL: Is that just because this is such a delicate matter or what?

PANELIST GROSSHEIDER: I am very sensitive and I am a deeply religious person, and I am afraid that I could not be not partial—I mean, I would weigh the evidence and everything, but I would say that the feelings I have for something like that, I could not.

DEFENSE COUNSEL: You could not be fair and impartial?

PANELIST GROSSHEIDER: Well, I could but it would be a problem for me.

DEFENSE COUNSEL: Is that just because of the nature of the crime itself being rape and sodomy?

PANELIST GROSSHEIDER: Yes.

DEFENSE COUNSEL: Does anyone else share Mrs. Grossheider's feelings? I see no hands.

Defendant argues that the responses of panelists Boren and Grossheider are indicative of the entire venirepanel's reluctance to answer candidly and thus the trial court abused its discretion in not allowing individual or small group voir dire. We disagree.

■ First of all, the procedure employed for the voir dire examination in this case finds direct approval in *State v. Richards*, 467 S.W.2d 33, 38 (Mo.1971). Furthermore, nothing that happened in the trial court gave any reason to hold that the generally permissible procedure used in this case was erroneous or unfair. Defense counsel specifically asked on three occasions whether any venireperson would have difficulty or feel inhibited about expressing their true beliefs in open court. None of the panel, besides panelists Boren and Grossheider, indicated in any way that they could not be frank and candid in the courtroom setting. Both panelists Boren and Grossheider were stricken for cause. Nothing in the record demonstrates "a real probability of injury"

to defendant's cause by the use of voir dire procedure used. The trial court did not abuse its discretion in its ruling.

Defendant contends in his third point that the trial court erred in sustaining an objection to a question asked by defense counsel on cross-examination of a state's witness as to the reputation of the complainant for truth and veracity. Defendant argues that this amounted to a denial of his right of cross-examination for impeachment, in that, complainant had already testified so as to place her credibility in issue.

State's witness, Deputy Sheriff Eddie D. James, was called by the state to testify about his investigation of the incident between defendant and complainant, and the rape and sodomy charges stemming therefrom. On cross-examination James testified that during the course of this investigation he interviewed a number of people concerning the incident.

Q. Who were some of the other people you talked to?

A. I talked to Deputy Paul Suver of the Scott County Sheriff's Department, Officer Hodo of the Scott City Police Department, Kergious J. Crites who is the operator at the electric substation on 61 south, a Mike Cowell who works at Rhodes City Truck Plaza as a gas station attendant, a Kenny Kile, who is a security guard at Havco Wood Products on Nash Road—several of the defense witnesses—Mary Schoen, the mother of the victim, her ex-husband, Richard Foulk, her daughter Melissa Foulk. There were several other people. I can't remember everybody's name.

Q. There were numerous people?

A. Yes.

Following this testimony, defense counsel attempted to elicit from the witness that as a result of his investigation, he found complainant's reputation for truthfulness to be bad. The state's objection to the question was sustained on the ground that an improper foundation had been laid. At a bench conference the trial court stated:

I sustained the objection to the question. I think it was an improper question and

there is no foundation for it. When you are talking about reputation, it is what your knowledge of the person's reputation is. Those items you just read into the record are correct, but there is no good showing that this witness associated with the people that ran around with her; so that's why the question was improper.

The defendant argues that Deputy James' investigation adequately demonstrated his authority to testify as to complainant's reputation for truthfulness and veracity because his investigation took him into the circles of people in the community in which complainant moved.

■ Since Deputy James' qualifications to testify as to the complainant's reputation was not established, the trial court correctly excluded the testimony. In *State v. Cross*, 343 S.W.2d 20, 23 (Mo.1961), our Supreme Court stated:

Our general rule as to reputation witnesses is well stated in *State v. Kain*, Mo., 330 S.W.2d 842, 846[8]: 'A person possessing the necessary testimonial qualifications, that is, acquaintance with the general reputation of the witness in the neighborhood or among the people with whom the witness associates for the character trait in question, may testify concerning such reputation.' (citations omitted)

The question posed by defendant's attorney did not contain the necessary basis for Deputy James to give an opinion of the complainant's reputation. There is no showing that he was familiar with her reputation in her neighborhood or among her associates in the community where she lived. The point is without merit.

In his fourth point, defendant contends that the trial court erred in refusing to permit the endorsement of two witnesses for the defense after the first day of trial. Defendant sought to endorse Gina Turner, an investigator with the public defender's office, and Kevin Junger, a clerk at a liquor store patronized by defendant and complainant on the day of the incident. Defendant argues that these witnesses would

have impeached the complaining witness. Turner would have allegedly testified to several inconsistencies in an earlier statement by complainant and Junger would have allegedly testified that he observed complainant's actions to be contrary to her direct testimony.

On August 8, 1984, the state filed a motion to produce and, among other things, requested the names of persons whom defendant intended to call as witnesses. Defendant's answer did not include the names of Gina Turner or Kevin Junger. With exceptions not here relevant, Rule 25.-05(A)(2) provides that the defendant shall disclose to counsel for the state, the names and last known addresses of persons, other than defendant, whom defendant intends to call as witnesses at any hearing or at the trial.

At trial, defendant attempted to justify the failure to comply with the state's discovery request on the grounds that there was no way of knowing that the additional witnesses would be necessary, in that, the defense was surprised at complainant's allegedly inconsistent testimony.

The state objected to Turner's and Junger's proposed testimony on the ground that they had not been endorsed. One of the initial matters resolved during the pretrial conference was that witnesses for both sides would be excluded from the courtroom during the trial, except while testifying. Gina Turner had been present in the courtroom during a substantial portion of the complaining witness' testimony. The state argued that the violation of the witness exclusion rule and that Turner would testify as to collateral matters justified her exclusion. As to Kevin Junger's testimony, the state argued that it pertained to a collateral matter clearly outweighed by the prejudice and surprise to the state.

The trial court sustained the state's objection for three stated reasons and denied defendant's request to endorse the witnesses. First, Turner had violated the witness exclusion rule. Second, the complainant had not denied making the statements that defendant wanted to use for impeachment.

Third, the matters upon which defendant sought to impeach the complaining witness were collateral.

We have examined the record and conclude that the trial court did not abuse its discretion in denying the request for endorsement.

■ Defendant sought, through Gina Turner, to contradict complainant's testimony in four areas; that she argued with her husband, that she never discussed borrowing money with defendant, that she went to a liquor store after borrowing money, and that she went to a ballgame after visiting two cemeteries. We conclude that these matters are collateral to the issues in the case. The defendant is entitled to show inconsistent statements by a prosecuting witness, but such impeachment must not concern an immaterial or collateral matter. *State v. Alexander*, 499 S.W.2d 439, 443 (Mo.1973). When the fact in dispute is of no material significance in the case or is not pertinent to the issues as developed, the matter is collateral. *State v. Ball*, 529 S.W.2d 901, 907 (Mo.App.1975). A matter is not collateral if the alleged discrepancy involves a crucial issue directly in controversy or relates to "any part of the witness' account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true." *Alexander*, 499 S.W.2d at 443 (quoting McCormick on Evidence § 47 (1954)).

■ In the instant case, we are unable to conclude that the alleged inconsistencies were of the type that complainant, as a matter of human experience, would not have been mistaken about. These incidents occurred before plaintiff was traumatized by rape and sodomy. The rape and sodomy could have hampered clear recollection of the incidents that went before. Complainant testified that she was dazed and in shock after the rape. Under these circumstances, the complainant could have been mistaken about these details.

■ As to Kevin Junger, defendant sought to show by his testimony that com-

plainant had been at a certain package liquor store in Scott City, Missouri, prior to helping a stranded motorist. Complainant testified that she had not been at the store prior to this event. Defense counsel, in his offer of proof, stated that Junger would testify that he remembered defendant came into the store twice that evening. The first time would have been at approximately 6:30 p.m., which according to complainant's testimony would have been prior to the time that assistance was rendered to the stranded motorist. Defense counsel was unsure whether Junger would testify whether complainant came into the store the first time or even if Junger could testify that he knew complainant or identify her. We conclude that this incident was also collateral to the issues in the case concerning defendant's guilt. This is the sort of episode that one could be mistaken about after being forcibly raped and sodomized. The trial court did not abuse its discretion.

In point five, defendant contends that the trial court erred in sustaining an objection to a question put to defense witness Richard Foulk (defendant's father). Defendant argues that he was denied the right to present relevant evidence in that he was not permitted to question Richard Foulk as to similar injuries the complainant received prior to the alleged rape.

██ Counsel for defendant made no offer of proof as to what Richard Foulk's testimony would have been at the time the state's objection thereto was sustained. All that appears in the record is defense counsel's conclusion that the testimony would be relevant because the prior injuries were similar to the injuries attributable to the rape and because it was probative as to who might have inflicted the injuries associated with the rape. Accordingly, this point was not preserved for appeal because no proper offer of proof was made.

██ When an objection is sustained to proffered evidence, the offering party must show its relevancy and materiality by way of an offer of proof in order to preserve the issue for appellate review. *State v. Brown*, 604 S.W.2d 10, 16 (Mo.App.1980).

To preserve the exclusion of proffered testimony for review it is essential that the offer be made at the time of the objection thereto. The offer must show what evidence will be given if the witness is permitted to answer, the purpose and the object of the testimony sought to be introduced, and all of the facts necessary to establish the admissibility of the evidence in sufficient detail to demonstrate its relevancy and materiality. *State v. Harlston*, 565 S.W.2d 773, 782 (Mo.App.1978). The purpose of these formalities is to make certain that the trial court and opposing counsel understand what evidence is being offered, and it is for this reason that the evidence should be stated in enough detail to demonstrate its materiality and its relevancy. *Id.* Defendant here made no offer to show what he expected the witness to say. The point has not been preserved for review.

In point six defendant claims that the trial court erred in overruling defendant's objection and denying his request for mistrial after the state asked Deputy Sheriff Eddie James in its case-in-chief whether he questioned defendant regarding a burglary.

The following interrogation of James is the subject of the allegation of error. It occurred during the state's case-in-chief.

PROSECUTOR: Deputy, what did you say to him [defendant] with regard to a burglary?

DEPUTY: Nothing.

DEFENSE COUNSEL: Your Honor, may we approach the bench?

THE COURT: Yes, sir.

(Counsel approached the bench and the following proceedings were had out of the hearing of the jury:)

DEFENSE COUNSEL: Judge, I think that was highly prejudicial and I am going to ask for a mistrial. We are not here on a burglary case but we are here on an issue of consent or rape, and bringing in this irrelevant, prejudicial matter,—

THE COURT: Let's think back to the opening statement. Did you not say

something about that in your opening statement?

DEFENSE COUNSEL: Opening statements are not evidence.

THE COURT: The objection is overruled.

PROSECUTOR: Thank you, Your Honor.

THE COURT: Your request is denied. (Proceedings resumed before the jury.)

PROSECUTOR: What did you talk to the defendant about?

DEPUTY: About the rape and sodomy.

PROSECUTOR: Was there any other offense?

DEPUTY: No.

PROSECUTOR: Are you certain of that?

DEPUTY: Positive.

 We note initially that defendant did not object to the state's question about the burglary. At the bench conference defendant only requested that a mistrial be declared. The decision to grant a mistrial rests within the trial court's sound discretion. *State v. Gilbert,* 636 S.W.2d 940, 943 (Mo. banc 1982). It must be remembered that mistrial is a drastic remedy, to be granted only with the greatest caution and in the most extraordinary circumstances. *Id.* In this situation we must determine whether, as a matter of law, the trial court abused its discretion in refusing to declare a mistrial. *State v. Camper,* 391 S.W.2d 926, 927–28 (Mo.1965).

Defendant argues that no issue of fact as to the "burglary" was before the jury when James testified because at that time defendant had not put on any evidence. Thus, defendant maintains that the testimony was irrelevant, prejudicial and inflammatory and, therefore, a mistrial should have been granted. The state argues that defendant invited this error and should not now be heard to complain. The state maintains that because counsel for defendant referred to the burglary in his opening statement and because defendant later testified to the same, defendant may not now take advantage of an error of his own making.

Defense counsel, in his opening statement, related the events surrounding defendant's arrest. Counsel narrated defendant's story as follows:

The Sheriff or Scott County law enforcement officer that came to pick [defendant] up didn't tell [defendant] what he was being taken down to the station for. [Defendant] thought he was to go down there to see about possibly working out a matter that he had there, a fine.

[Defendant] was transported to Scott County and then the Sheriff of this county and Deputy James picked him up in Benton, bringing him up here, again to ask him, accusing him saying: *"You are a suspect in a burglary in Cape that happened last night."*

Robert will tell you he said: "That can't be true because I was out and I got a little last night." Those will be his words. They said: "Well, that's all we need to know." (emphasis added).

During the course of defendant's case-in-chief, defense counsel brought out the anticipated proof alluded to in his opening statement.

DEFENSE COUNSEL: Robert, did you have an occasion to talk to the deputies about this incident?

APPELLANT: Uh, yes, sir, uh, Sheriff Gribler and Officer James, uh, uh, when they were bringing me up here, between the first Cape exit and the second Cape exit, Sheriff Gribler he asked me, said: *"Robert, we got your description over a burglary that happened in Cape City last night."* That's when I told him, I said: "Hey, how could it be me because I was out getting me some last night and I can prove where I was at."

DEFENSE COUNSEL: What was his response to you?

APPELLANT: That's when he said that was all they was wanting to know. (emphasis added).

In an attempt to refute this testimony, the state called Sheriff Herman Gibler as a witness. Gibler testified that at no time was any mention made of any burglary. Defendant did not object to this testimony.

 We think it clear that error intervened in the admission of Deputy James'

testimony concerning what he said to defendant with regard to a burglary. This testimony was entirely irrelevant to the charges laid against defendant, i.e., rape and sodomy. Contrary to the state's assertion, defense counsel's mention of the burglary in his opening statement did not interject the issue of burglary into the case. An opening statement does not constitute evidence. *State v. Hoelzer*, 493 S.W.2d 703, 706 (Mo.App.1973). Apparently, the state got ahead of itself in seeking to impeach defendant's story. But, as there was nothing in evidence to impeach, it was error to allow James' testimony into evidence.

■■ Likewise, defendant did not acquiesce in the error by introducing countervailing testimony of defendant. Where a party is forced by an adverse ruling of the trial court to meet an issue which he or she should not be compelled to meet, the fact that he or she thereupon adduces countervailing evidence upon such issue does not preclude the party from insisting on appeal that the original ruling of the trial court was wrong. *See State ex rel. State Highway Commission v. Blobeck Inv. Co.*, 233 Mo.App. 858, 110 S.W.2d 860, 863 (1937). *See also Robert v. Davis*, 235 Mo.App. 974, 142 S.W.2d 1111, 1116–17 (1940). In both *Blobeck* and *Robert*, the parties appealing had objected to the admission of evidence that the trial court erroneously admitted. The parties, thereafter, introduced similar evidence. This, however, was not deemed to have precluded the appeal of the trial court's erroneous ruling.

■■ Although we conclude there was error, reversal is not required. James testified that he mentioned "nothing" about a burglary to defendant. There was no testimony that defendant had engaged in other crimes. The testimony was to the contrary. After defendant's request for mistrial, the state made clear that no other offense was involved. Further, the jury was at least made aware by defense counsel's opening statement that the subject of burglary might arise. Under these circumstances we find that the error was harmless.

In his seventh point on appeal, defendant claims that the trial court erred in admitting into evidence a letter written by him. Defendant argues that the rules of discovery were violated in that the letter was not timely disclosed and that the letter was admitted in violation of the best evidence rule.

Defendant does not cite any particular rule of discovery that the state violated. Rather, he conclusively avers that "discovery rules" were violated because a letter written by defendant was not disclosed by the state until the morning of trial. On August 8, 1984, defendant filed a motion to produce and requested, among other things, any books, papers, documents, photographs that the state possessed and that pertained to the case. Rule 25.03(A)(6). On November 21, 1984, the state responded and revealed that it possessed "letters of defendant." The trial began December 4, 1984. During the trial defendant testified on cross-examination that he wrote the letter in question on November 4, 1984. The state did not provide defendant with copies of the letters it possessed and it does not appear from the record that defendant ever sought to obtain copies of the letters or their contents.

The letter, admittedly written by defendant, could be read as a plan for escaping from the Cape Girardeau County Jail in which defendant was being held pending trial. During the pretrial conference, defendant made a motion in limine to prohibit the state from using any evidence of the escape attempt on the grounds of relevancy. The trial court preliminarily denied defendant's motion, pending the receipt of further testimonial evidence at trial. During the discussion relating to defendant's motion, counsel for defendant mentioned that the state had not provided him with the letter. However, he did not request the court to exclude the letter based on a violation of the rules of discovery. At the time the letter was admitted into evidence, defendant did not lodge an objection based on a discovery violation. Defendant's only objection was based on the best evidence rule.

We conclude that defendant has failed to preserve his discovery rule violation claim for review. Objections to evidence must be specific, must point out the grounds thereof, and are to be determined upon the grounds stated therein. The point raised on appeal must be based upon the theory of the objection as made at the trial. *State v. Lang,* 515 S.W.2d 507, 511 (Mo.1974). In *State v. Merchant,* 119 S.W.2d 303 (Mo.1938), the defendant objected to hospital records on the ground it was "not the best evidence." The records concerned the condition of a rape victim the day after the offense. On appeal, the defendant argued he had been denied the constitutional right to confrontation by the preclusion of the records. Our Supreme Court ruled that the constitutional claim was not preserved because the objection at trial was not sufficient. *Id.* at 304. Here, we are confronted with a similar situation. We believe that defendant's "best evidence" objection was insufficient to preserve his claim of discovery violation for review.

In any event, reviewing for plain error we find no manifest injustice. As defendant concedes, when discovery rules are violated, the question of remedy lies within the sound discretion of the trial court. *State v. Royal,* 610 S.W.2d 946, 951 (Mo. banc 1981). Discretion is abused when the trial court fails to impose a sanction only where the admittance of the evidence results in a fundamental unfairness to the defendant. Fundamental unfairness is measured by whether the earlier discovery of the evidence would have likely affected the result of the trial. *Id.* Here, we cannot conclude there was fundamental unfairness. There was ample evidence to establish defendant's guilt. The letter in question was only used to impeach defendant's credibility.

We now turn to defendant's contention that the admission of a copy of the letter in question violated the best evidence rule. At trial plaintiff testified that he recognized the copy of the letter. He testified that it was in his handwriting and that he had written such a letter. He testified that he recognized the copy of the letter and that all its contents were accurate. He testified that he recognized the copy of the letter and that all its contents were accurate. He testified that he remembered writing every line contained in the copy of the letter.

Simply stated, the best evidence rule requires that "in proving the terms of a writing, *where the terms are material,* the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." McCormick on Evidence, § 230 at p. 704 (3rd ed. 1984). (emphasis added). "The best evidence rule does not come into play simply because a witness is testifying to facts which are also contained in a writing. It is activated when *the terms of a writing are in dispute." Moschale v. Mock,* 591 S.W.2d 415, 419 (Mo.App.1979) (emphasis in original). Here, there is no dispute as to what was contained in the copy of the letter. We conclude that the trial court did not err in receiving into evidence the copy of the letter.

In point eight, defendant argues that the trial court erred in permitting ten letters (State's Exhibits 11A through 11J) written by him to his mother to be used by the state to impeach him during cross-examination. Defendant argues that the letters were not a proper impeachment tool because the lack of a claim of innocence by defendant in the letters, did not constitute an admission of guilt or contradict his claim of innocence.

At trial, defendant objected that the letters were prejudicial, irrelevant, and invaded the jury's province. Defendant failed to explain how the letters were prejudicial and only generally specified that the letters were irrelevant on the issue of consent. In his motion for new trial, defendant claimed prejudice in the admission of the letters because:

> The trial court erred by allowing the state, over defendant's objection, to improperly use state's exhibits 11A through 11J during cross-examination of the defendant. This was error for the reason

that the issue of the letters was not raised on defendant's direct examination nor were the letters a proper impeachment tool as none of them were related to defendant's credibility.

█ It is apparent that defendant is now trying to avail himself of a theory of objection not raised at trial. This, defendant may not do. A point on appeal must be based upon the theory voiced in the objection at trial, and a defendant cannot expand or change on appeal the objection as made. *State v. Applewhite*, 682 S.W.2d 185, 188 (Mo.App.1984). Since defendant's theory on appeal was not the premise for the objection at trial, it was not preserved for review. However, even if the point had been preserved, it would be unavailing.

On appeal, defendant argues that the letters were improperly admitted because they did not contradict his claim of innocence, nor did they amount to an admission of guilt. The prosecutor used the letters in an attempt to impeach defendant. On direct examination, defendant was questioned about one of the letters written to his mother (State's Exhibit 11–J).

Q. Why did you write that letter to your mother?

A. I was asking her if she would drop the charges to keep from going to trial.

Q. For what reason?

A. Well, uh, I know how she is, uh, uh, the alcohol and her husband too. I didn't want her to go through a trial *and me go through a trial over something that I did not do.* I even—I asked her—I was asking her to drop the charges. (emphasis added).

In cross-examination, defendant was asked about all the letters he had written to his mother, including State's Exhibit 11–J.

Q. Now your testimony earlier was you wrote her a letter [Exhibit 11–J] to get her to drop the charge because you were innocent, is that correct?

A. Yes, sir, asking her to drop the charge.

Q. Because of your innocence?

A. Yes, sir.

. . .

Q. You have written a number of letters to your mother, haven't you?

A. Yes, sir.

Q. And the purpose of those letters, you've testified, is to tell her of your innocence and please drop the charge; there's no reason to prosecute an innocent man—is that correct?

A. Yes, sir.

The defendant was asked as to whether the word "innocent" appeared in any of the letters. Only in letter 11–A did the term innocent appear. Defendant wrote, "I'm going to talk to my defender next week and get him to file a motion for a fast and speedy trial and I'm going to do everything but say I'm innocent." Defendant testified that the word "innocent" did not appear in any of the other letters.

█ A defendant in a criminal case who elects to testify in his own behalf may be cross-examined in detail as to any matter generally referred to in his direct examination and may be contradicted or impeached as any other witness. § 546.260 RSMo (Supp.1984). Here, defendant contends that the letters were improperly used on cross-examination because no contradiction occurred between defendant's claim of innocence at trial and the letters used to impeach him. It is true, as defendant maintains, that his silence in his letters, 11–B through 11–J, as to his innocence does not constitute an admission of guilt and is not inconsistent with his claim of innocence on direct examination.

█ This, however, does not end our inquiry. Defendant brought up the matter of why letter 11–J was written to his mother during his case-in-chief. Defendant, as part of his reason, said that he did not want to "go through a trial over something I did not do." This opened the door for the state's cross-examination as to why the letters were written. If in direct examination, the defendant refers in a general way to a subject, he may then be cross-examined in detail on that subject. *State v. Murphy*, 592 S.W.2d 727, 731 (Mo. banc 1979). Of course, the trial court is vested

with broad discretion in determining the extent of cross-examination. *State v. Lue,* 598 S.W.2d 133, 138 (Mo. banc 1980).

■ In the instant case, defendant broached the general subject of his purpose in writing a letter to his mother. This matter was within the scope of cross-examination. The prosecutor had the right to inquire in detail on this subject. In so doing, the prosecutor elicited from defendant that his purpose in writing the letters was to tell his mother of his innocence. Once defendant stated this, the lack of his claim of innocence in letters 11–B through 11–J became a contradiction and thus were properly admitted. As to letter 11–A, we find that defendant's statement that he would do "everything but say I'm innocent," is inconsistent with his claim of innocence. Thus, the letters were properly admitted.

In his final point on appeal, defendant claims that the trial court erred in restricting voir dire examination by not allowing counsel to question the panel in areas of reasonable doubt, burden of proof, and presumption of innocence.

Prior to the summoning of the jury, the trial judge advised both counsel that during voir dire examination they were to refrain from going into the areas of presumption of innocence, burden of proof, and reasonable doubt. The trial judge deemed questions by counsel in these areas unnecessary as he intended to instruct the jury specifically in these areas under MAI–CR 2d 1.02 and MAI–CR 2d 2.20. Both instructions contain the following direction:

> The charge of any offense is not evidence, and it creates no inference that any offense was committed or that (the) (either) (any) defendant is guilty of an offense.

> The (Each) defendant is presumed to be innocent unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt that (the) (either) (any) defendant is guilty.

> A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are fairly convinced that (a) (the) defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

The trial judge advised both counsel that after reading the above instruction he would ask the panel whether they could follow the instruction. If all responded affirmatively, then both counsel were to refrain from questioning in those areas.

Defendant took exception with the trial court's ruling and proposed several questions he desired to ask.

> We would like to ask the jury questions, for example, "Ladies and gentlemen of the jury, as you are sitting here right now in this trial, do you feel that Mr. Foulk must in fact present evidence in this case?" And another question: "Do you feel, sitting right now in this case, that Mr. Foulk is either guilty or not guilty at this stage of the proceedings.?"

Defendant argues that the trial court's restriction denied his constitutional right to an impartial jury because particularized questioning could have exposed specific biases.

■ The examination of venirepersons as to their qualifications to sit as jurors is subject to the supervision of the trial court. Although a liberal latitude is allowed in the examination of the panel, it is not infinite. The trial court possesses discretion as to the nature and extent of what questions counsel may ask and the exercise of the discretion will be disturbed on appeal only when the record shows a manifest abuse of that discretion. *State v. Lumsden,* 589 S.W.2d 226, 229 (Mo. banc 1979). The precise point raised here was decided in *Williams v. State,* 558 S.W.2d 671 (Mo.App.1977). The trial judge in

*Williams* instructed the venirepersons concerning the presumption of innocence, burden of proof, and reasonable doubt and inquired if any member of the panel would be unable to follow his instruction. Our brethren of the Western District concluded that the trial court did not abuse its discretion in refusing to allow defense counsel to cover the same ground a second time. *Id.* at 674. There, as here, defense counsel gave no indication that he was seeking to develop whether or not particular venirepersons entertained unyielding views which would prevent them from following the law pursuant to the court's instruction. *Id.* Defense counsel here only sought their personal feelings respecting the rules referred to. The venireperson's personal feeling as to the law are immaterial unless so unyielding so as to preclude them from following the law under the court's instruction. *State v. Smith*, 422 S.W.2d 50, 67–68 (Mo. banc 1967). Here, there was no abuse of discretion by the trial court in refusing to allow counsel to further question in the areas of burden of proof, presumption of innocence, and reasonable doubt. *See State v. Evans*, 701 S.W.2d 569, 577 (Mo. App.1985).

For the foregoing reasons the judgment is affirmed.

GARY M. GAERTNER, P.J., concurs.

KAROHL, J., Dissents in Separate Opinion.

KAROHL, Judge, dissenting.

The essential facts of this case are that a mother accused her son of rape and sodomy. He admitted sexual acts with his mother, but claimed she was the aggressor. She was an admitted active alcoholic and was drinking on the occasion in question. Her relatives, including her mother, testified she could not be trusted to tell the truth. Her version was supported by some evidence of injuries. The function of the jury was to decide who was guilty, the complaining witness of seducing her son into an incestuous relationship or the son of detestable crimes.

Before the trial began defendant testified in camera to satisfy § 491.015.3 RSMo 1978 and in opposition to the state's motion in limine. The charged acts occurred on June 1, 1984. The trial was held in December, 1984. Defendant was prepared to testify that in March, 1979, his mother seduced him in her home; that in 1981 she attempted to seduce him in an automobile; and, in June 1982 in her home she again attempted to seduce him. The first two occasions were connected with her drinking habit. By his testimony on each occasion she urged him to view her by a different identity-that of her second husband's first wife. The elements of who was the aggressor, her use of alcohol and location were common to the charged acts. A further fact connected these prior matters to the charged acts. By defendant's testimony Nancy Webb's husband Bill Webb, openly accused her of engaging in sexual acts with defendant. At trial defendant testified part of the seduction was a statement by his mother that since they were accused of such acts they may as well indulge. The prior events explain this statement and made it relevant and important.

When this case was tried the holdings of our Supreme Court in *State v. Brown*, 636 S.W.2d 929 (Mo. banc 1982) and *State v. Ray*, 637 S.W.2d 708 (Mo. banc 1982) were the law of this state. These decisions determined that there were, in effect, five exceptions to the presumption against allowing evidence of specific instances of the complaining victim's prior sexual acts within the "Rape Shield Law." Four exceptions were described in § 491.015.1 and a fifth in § 491.015.2. This view has since been reconsidered. *State v. Jones*, 716 S.W.2d 799 (Mo. banc 1986), Blackmar and Welliver dissenting. In *Jones*, the court relied heavily on corroborating physical evidence in support of the complaining witness's testimony and opined, "[i]f this case involved merely a swearing match between the complaining witness and the accused on the issue of consent [it would be] inclined to reverse and remand." *Id.* 801. It held, "[in] these circumstances, we cannot say that the trial court abused its discretion

and the appellant was deprived of a fair trial."

On the present facts and in view of the discussion in *Jones,* the decision upon appellant's first claim of error depends upon an inquiry as to whether there was a pure swearing match and whether exclusion of the proffered evidence was such an abuse of discretion as to deny defendant a fair trial.

The circumstances in this case are unusual if not unique. Even if sexual assaults are all too common the rape and sodomy by a son of his mother is not a common charge. The element of consent was therefore extraordinary and cast a like burden on defendant whose sole defense was consent by a mother, not mere consent. The charges and the circumstances are in themselves so outrageous, whether or not the defendant is innocent, or guilty. For this reason the determination of what is reasonably contemporaneous must be very carefully scrutinized in order that a fair trial on these special facts may be insured.

The trial court refused the evidence solely on the test of remoteness as provided in § 491.015.1(1). The relevant period is from March, 1979 to June, 1982, compared with June, 1984. What may be too remote in one case, as for example between strangers, is not necessarily too remote in another. We have no other cases to determine what is reasonably contemporaneous for these facts. The analysis must be more basic.

Under the circumstances of this case two years is not *unreasonably* contemporaneous. Applying the shield "should not deprive a defendant of an opportunity to prevent his whole defense." *State v. Jones,* 716 S.W.2d at 804 (view of Judge Blackmar in dissent). How could the complaining witness have been prejudiced by defendant's inquiry? Presumably she would have simply denied the prior events in the same manner that she denied consent for the present charges. If there was substance to the "story" the defendant has been denied a fair trial. He was not allowed to offer this testimony in his own defense. I

find nothing in the rape shield statute which prohibits his testimony where there are coincidental facts and circumstances involving the alleged prior events and present facts which are directly relevant to his defense to the current charges. Further, this evidence was admissible under § 491.015.1(1) RSMo 1978 either in the form of cross-examination or his own testimony when considering the question of consent by a mother. No period of time, certainly not two years, would be not reasonably contemporaneous for purposes of applying the shield law. What was unreasonable in *Jones* would not be unreasonable in this case. *Jones* is not decisive.

Defendant's third claim of error complains of restriction of cross-examination on the issue of the reputation of the complaining witness. On this claim of error I agree with the result reached by the majority. There is an alternative or additional reason to deny error on this claim. There was considerable evidence that the complaining witness was not a truthful person. Her mother and her sister so testified for the defendant. The possibility of prejudice in denying this testimony is too remote to find error.

Finally, there is defendant's claim that he was denied an impartial jury. The court instructed the venire panel with MAI. CR 2d 2.20 as part of MAI–CR 2d 1.02 and asked whether or not the panel could follow those instructions. It directed both parties not to voir dire on presumption of innocence, burden of proof, reasonable doubt and proof beyond reasonable doubt. Defendant took exception and suggested two questions he wanted and "questions of like nature." We need not decide the broad question of whether the court can pre-empt or conduct voir dire in a criminal case to the exclusion of the parties. The question here is whether the record establishes that the procedure utilized by the trial court in this case was sufficient to satisfy the rights of the parties. The two questions suggested by the defendant relate to the feeling of a prospective juror on whether defendant must offer evidence and whether a prejudgment had been made.

Both questions are proper and not fully covered by the instruction of the court. Even if a venire person promises to follow the instruction, the parties are to choose which persons are most likely to grant a fair trial and the procedure employed here is inadequate for that purpose. There is no record that present counsel would abuse the selection process in qualifying the jury. The state of mind of a venire person is distinctly different than a promise to follow the court's instructions. This procedure was not followed in *Williams v. State*, 558 S.W.2d 671 (Mo.App.1977). In *Williams*, questions were permitted and the court refused to permit answers on matters already covered by the court. The trial court in the present case did not deny questions for that reason because it summarily denied all questions in these areas. In so doing it misapplied *Williams* and foreclosed any determination that a venire person held unyielding views on these matters. The basis of the holding in *Williams* was that counsel did not indicate his questions were directed toward developing whether an individual venire person "entertained unyielding views." The court said, "[n]o question is raised as to any limitation on counsel's individual questioning" *Id.* 674. *Williams* held only that the court could deny answers to questions which were repetitive. Neither of the questions proposed by defendant were repetitive. Neither question relates to a paraphrase statement of the law. For this reason *State v. Smith*, 422 S.W.2d 50, 67–68 (Mo. banc 1967) is inapposite. *Smith* dealt only with personal feelings on the merits of the rules of law contained in MAI–CR 2d 2.20. It did not approve prohibiting a question on the feelings of a venire person on the effect of a defendant who does not offer evidence or whether the case had been prejudged. On the contrary, these questions may evoke answers which may indicate an "unyielding view." In this case no inquiry was allowed for any purpose with the result that the defendant was denied information to which he was entitled in the selection process.

1. Section 569.170 now appears in RSMo 1986.

On all other matters I agree with the view of the majority opinion.

For the reasons expressed, I respectfully dissent.