**STATE of Missouri, Plaintiff–Respondent,**

v.

**Othel BROWN, Jr., Defendant–Appellant.**

No. 53960.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 23, 1988.

Burton H. Shostak, Deborah J. Kerns, St. Louis, for defendant-appellant.

George R. "Buzz" Westfall, Cynthia A. Rosebaugh, Clayton, for plaintiff-respondent.

GRIMM, Judge.

In this non-jury case, defendant appeals his conviction of attempted sexual abuse in the first degree in violation of §§ 564.011 and 566.100, RSMo. 1986. We affirm.

Defendant alleges that the trial court erred in failing to sustain his motion to suppress his statement, and in overruling his objection to its admission. He also contends that the trial court erroneously received into evidence his clothing. He argues that both rulings of the trial court were erroneous because there was no prob-able cause for the arrest and subsequent seizures of his clothing. We disagree, because the statement and the clothes were the products of a lawful arrest, and thereby admissible.

Defendant was arrested around 12:30 p.m. on December 8, 1986. Earlier that day, at approximately 7:55 a.m., T.W., a 13 year old girl, on her way to school, saw a "guy in a red, two—two-door car, ... in a church parking lot," near Hartland Street. The car door was open, the man had his pants down past his knees, and "he was playing with himself." The man, identified at trial as the defendant, was wearing a long gray coat, gray pants, and a gray scarf around his neck.

A short time later, as T.W. was walking on Hartland Street, the defendant grabbed her around the waist and started moving his hands up toward her chest, while say-ing "Foxy mama and you have a cute ass, too." T.W. kicked him and ran to school. At approximately 8:30 a.m., T.W. told the school principal about the incident.

Before T.W. arrived at school, a school bus driver talked with the principal about some problems she was having with some of the children on her bus. The principal rode the bus for a few minutes sometime between 8:00 and 8:30 a.m. For some rea-son unexplained in the record, she told the bus driver to look for "either a candy apple red car, a burgundy car, or a gold car, with a black man driving in the area...."

After the principal got off the bus, the bus driver saw a candy apple red car going west on Argyle Street, approximately four blocks from Hartland Street. She saw the car two more times that morning, the last time being shortly after 8:30 a.m. The man she saw wore gray pants, a gray overcoat, and a gray scarf. She wrote down the license number of the car, and later gave it to the school, as well as the police.

The school principal called the police about 9:30 a.m.; she reported the incident and gave them the license number received from the school bus driver.

Overland police officer Moss interviewed T.W. and the school principal at about 10:00 a.m. Moss ran a record check on the license number he received from the school principal; it disclosed that the license was issued to the defendant. Moss conveyed the information he had to Detective Papish, who was to do a follow up investigation.

Papish, after getting Moss's report, traced the license number to a car parked in a Venture parking lot. He and his partner arrested defendant at Venture around 12:30 p.m. Defendant was wearing the clothes described by T.W. and the school bus driver. After the defendant was taken to the police station, defendant signed a *Miranda* waiver, which was witnessed by Papish and Moss. Defendant then wrote out his statement and the police seized his clothes.

■ Apparently on the morning of trial, but before the trial commenced, defendant moved to suppress his statement. The court overruled the motion saying it was untimely. Allowing a trial judge the right to establish a schedule for the filing and hearing of such motions could promote a more orderly trial procedure. Our Supreme Court Rules, however, do not presently grant such authority, at least as they relate to motions to suppress. Rule 24.05 requires only that the motion be filed "before trial." *State v. Jackson,* 477 S.W.2d 47, 50–51, (Mo.Div. 2 1972); Compare, *State v. Rains,* 537 S.W.2d 219, 223 (Mo. App.E.D.1976). Here, the motion to suppress was filed before trial and, thus, was timely. The reason given by the trial court for denying the motion was erroneous.

■ Even though the reason given was erroneous, the motion to suppress should have been denied and the statement was properly admitted because there was probable cause to arrest defendant. Officer Moss interviewed the victim around 10:00 a.m. and received a description of the subject, his clothes, and his car. Moss also obtained a car license number from the principal, and gave it to another officer. That officer, by tracing the license number, found defendant and arrested him. At the time of arrest, defendant, his clothes, and his car matched the description previously given the officers.

In determining whether probable cause exists, the arresting officer personally need not possess all of the available information. Rather, the collective knowledge and the available facts of the law enforcement agency involved are the criteria to be used in assessing whether probable cause exists. *State v. Pruitt,* 479 S.W.2d 785, 788 (Mo. banc 1972); *State v. Young,* 701 S.W.2d 490, 494 (Mo.App.E.D.1985); *State v. Morris,* 662 S.W.2d 884, 893 (Mo.App.S.D.1983). The arresting officer had probable cause to arrest defendant. Defendant's statement, therefore, was the product of a lawful arrest and thereby admissible.

■ As to the second part of defendant's contention regarding the admissibility of his clothes, this point is not preserved for review since defendant failed to make the requisite pre-trial motion to suppress the clothing. *State v. Yowell,* 513 S.W.2d 397, 402 (Mo. banc 1974); *State v. Hall,* 534 S.W.2d 508, 510 (Mo.App.E.D.1976).

■ Furthermore, defendant's arrest being lawful, seizure of his coat, pants, and scarf was lawful. *Morris, supra,* at 893.

The judgment is affirmed.

GARY M. GAERTNER and KAROHL, JJ., concur.