**STATE of Missouri, Plaintiff/Respondent,**

v.

**Kevin MURRAY, Defendant/Appellant.**

**Kevin MURRAY, Movant/Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 58287, 60750.**

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 22, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 1992.

John Klosterman, St. Louis, for appellant.

William L. Webster, Atty. Gen., Rudolph R. Rhodes, IV, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

In this jury-tried case, defendant was convicted of forcible rape in violation of

§ 566.030.[1] We reverse and remand.

On direct appeal, defendant raises two points. First, he alleges the trial court erred in precluding the admission of evidence of prior consensual sexual relations between defendant and victim. Second, he contends the trial court erred in denying his motions to suppress as untimely.

Defendant also challenges the denial of his Rule 29.15 motion. In view of our disposition of his direct appeal, this challenge is moot.

## I. Exclusion of Evidence of Victim's Prior Sexual Relations with Defendant

In his first point, defendant assigns error in the trial court's refusal to allow the introduction of evidence of prior consensual sexual relations between victim and defendant. Defendant alleges, "the prior sexual relations that occurred three and one half months and six and one half months before the alleged rape were reasonably contemporaneous within the meaning of section 491.015.1(1), [defendant] raised consent as a defense, and the court's ruling deprived [defendant] of a fair trial."

Section 491.015, sometimes referred to as the "rape shield" law, provides:

1. In prosecutions [for the crime of rape], ... evidence of specific instances of the complaining witness' prior sexual conduct ... is inadmissible, except where such specific instances are:

(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime;

\*    \*    \*    \*    \*    \*

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

Pursuant to § 491.015.3, defendant filed a written motion. The motion sought a hearing to determine the admissibility of evidence of his prior sexual conduct with victim. An in camera hearing was held. Defendant testified that he had known victim since they attended high school together in 1975. He lost track of her after she was married.

In 1988, defendant would visit Valerie Sample, the mother of his children. Valerie[2] and victim were friends, and they lived only "10 or 15 doors away" from each other. Defendant saw victim at Valerie's apartment "[s]o many times I can't count it."

From August, 1988 until March, 1989, defendant and victim visited every day. They would get "high smoking cocaine, smoking weed." Defendant said that once in September and once in December, 1988, victim "made the kids go upstairs." They then had consensual sexual relations in victim's apartment. No other evidence was presented in the in camera hearing.

At the conclusion of the hearing, the trial judge said he was "ruling in [defendant's] favor at this point in time." The next day, however, the assistant prosecuting attorney argued to the court that his research indicated the testimony was not admissible. The prosecutor relied on *State v. Jones*, 716 S.W.2d 799 (Mo. banc 1986) and *State v. Boyd*, 643 S.W.2d 825 (Mo.App.E.D. 1982). The trial judge reversed his ruling.

At trial, victim said she had known Valerie since 1976 and had known defendant since September, 1988. She knew that defendant was living with Valerie in March, 1989. Because victim did not have a telephone, she routinely went to Valerie's to use her phone.

On March 18, 1989, victim went to Valerie's apartment between 5:30 and 6:00 p.m. to use the phone. In response to her knock on the door, defendant opened it and let her in; he was the only one there.

---

1. All statutory references are to RSMo 1986.

2. We refer to individuals by their first name for ease of reading, and not out of disrespect.

While she was using the phone, defendant hung up the phone. She started to leave, but defendant grabbed her T-shirt. They struggled and she tried to get loose, but was unable to do so. Defendant removed her clothes and his. Defendant could not achieve an erection; however, he did put his penis in her.

Victim hollered, "someone's at the door." Defendant stooped down, and she pushed him away and got free. She ran naked to her apartment and told her daughter to call the police. Victim testified she did not want to have sex with defendant that day, and she did not consent.

On cross-examination, victim admitted that she had been addicted to cocaine, but was not doing drugs in late 1988. She denied that when she went to Valerie's apartment, they bought and used some crack cocaine. She also denied that she removed her own clothes, and denied telling three other women she took her clothes off.

Victim's brother testified that he answered the phone at his mother's house when victim called. She asked to speak to her mother. Mother testified that when she picked up the phone, no one was there and then the phone went dead.

The State introduced a statement obtained from defendant. In that statement, defendant said he asked victim if she wanted to have sex. He said she agreed, and wanted to do it on the floor. He helped her remove her clothes and attempted to have sex with her.

Defendant said he had trouble maintaining an erection, but did achieve penetration. He acknowledged that while they were having sex, she told him to stop and pushed him away. She then ran from the house.

At trial, defendant testified in his defense. He said victim came to Valerie's apartment between 3:00 and 4:00 p.m. on March 18 and used the phone. After using the phone, she asked defendant if he had "any money to get high." He had $5, and she had $20, so they pooled it and defendant left and purchased some rock cocaine. On his return, they smoked it.

According to defendant, victim got hot smoking the cocaine and took off some of her clothes. He asked her if she wanted to have sex, and she said "Not right now." They continued smoking.

Victim then removed the rest of her clothes. They attempted to have sex, but he could not achieve an erection. When they heard a knock at the door, "she just jumped up and ran."

Valerie testified that victim told her she went to her apartment to use the phone; that victim took her clothes off; and that victim and defendant attempted to have sex, but defendant could not achieve an erection. Other defense witnesses gave essentially similar testimony.

Further, victim's cousin testified she had done drugs with victim. Victim told her that at the time of the incident, she and defendant "had been getting high." Cousin said that when victim gets high, she "says things that, you know, doesn't really happen. She doesn't remember a lot of things after she done got high."

We first observe that § 491.015.3 not only requires the trial court to conduct an in camera hearing, it also directs, "the court shall set forth its reasons for its ruling." The trial court failed to do so.

Defendant's brief addresses only the issue of "reasonably contemporaneous." The State's brief declares: "The trial court refused to admit the evidence because it was too remote." We address the issue framed by the parties.

■ "Reasonably contemporaneous" is a concept that cannot be served by a generally applicable rule. Thus, while the length of time that elapsed between the incidents sought to be admitted and the alleged crime is a relevant factor, it is not, standing alone, a sound basis on which to exclude or admit evidence under § 491.015.-1(1). As stated in *Jones*, "[c]ertainly judicial review by the use of clocks or calendars is not enough.... [W]e must decide whether, in the circumstances, accused was deprived of a fair trial." *Jones*, 716 S.W.2d at 801.

■ "Reasonably contemporaneous" contemplates a balancing test. The statute provides protection for the privacy of complaining witnesses. This protection is countered by the Sixth Amendment and the Due Process clause of the Fourteenth Amendment of the U.S. Constitution. Both protect defendants' right to a fair trial, most notably, defendants' right to confront and cross-examine witnesses presented against them and the right to call witnesses in their own behalf. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297, 308 (1973); *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). These rights are critical where a given witness' testimony is the key element in the State's case against a defendant. *Davis*, 415 U.S. at 317, 93 S.Ct. at 1111, 39 L.Ed.2d at 354.

■ As stated above, the State relied on two cases, *State v. Jones* and *State v. Boyd*. In *Jones*, 716 S.W.2d at 801, our supreme court said: "A definition of 'reasonably contemporaneous' is elusive." The *Jones* court approved of the following statement from *State v. Crisp*, 629 S.W.2d 475, 479 (Mo.App.S.D.1981):

> Reasonably means within the bounds of common sense. Contemporaneous means originating, or happening, during the same period of time. It is not common sense to say that events that happened almost three years apart were reasonably contemporaneous.

In *Jones*, the defendant proffered evidence that he had consensual sexual intercourse with the victim some three and one-half to four and one-half months before the date of the alleged rape and sodomy. The trial court denied the offer.

In affirming the trial court, the supreme court stated that if *Jones* had involved "merely a swearing match between the complaining witness and the accused on the issue of consent we would be inclined to reverse and remand for new trial." *Jones*, 716 S.W.2d at 801. At trial, an emergency room physician testified he examined the victim and found (1) a cervical tear, (2) redness on the side of her neck, and (3) bruising on the back of her neck. *Id.* Victim testified she awoke with a pair of hands around her neck; the defendant threatened her, saying if she made any noise, he would kill her and her children. The physician's testimony sufficiently corroborated the victim's account.

In *Boyd*, 643 S.W.2d 825, the victim testified the defendant picked her up for a date. The two accompanied two other men to a house, allegedly for the other men to "pick up a woman." *Id.* at 827. The four went into the house. No one was there. The three men raped the victim. *Id.*

The defendant in *Boyd* sought to introduce evidence that he and the victim had prior consensual sexual relations. At the in camera hearing, the defendant testified he had consensual sexual relations with the victim three times: once approximately six months before the incident, once six days later, and once six days before the incident. *Id.* at 829. The trial court ruled that the defendant could inquire into the occurrence six days before the incident, but could not inquire into the earlier occurrences.

At trial, defendant did not inquire about the occurrence six days before the incident. On appeal, defendant alleged error in denying his motion to admit evidence of the most remote incidents of his prior sexual conduct with the victim.

In affirming the trial court's decision, this court stated that "[i]n view of all the circumstances," the trial court had not abused its discretion. *Id.* at 830. The circumstances in *Boyd* included (1) the defendant was allowed to produce evidence of the most recent, and thus comparatively more probative, incident of prior consensual sexual conduct; and (2) the defendant failed to take advantage of that ruling. These circumstances are not present here.

Although not referred to by either party, our opinion in *State v. Foulk*, 725 S.W.2d 56 (Mo.App.E.D.1987), supports our disposition of this point. In *Foulk*, we affirmed the trial court's exclusion of evidence of consensual sexual relations between the defendant and the victim that occurred between five and two years before the rape. *Id.* at 61. There we held: "The instant

case is not a mere swearing match. The [victim's] testimony was corroborated by medical testimony.... [T]he examining physician ... testified ... he found widespread bruising about [victim's] face, back, arms, and her internal genitalia, and that there were external abrasions of her vagina." *Id.* at 61–62. The medical evidence sufficiently corroborated victim's testimony.

In both *Jones* and *Foulk*, the presence of corroborating evidence influenced the court's decision. Corroborating evidence is evidence that adds weight and credibility to the testimony of a witness. *Black's Law Dictionary* 344 (6th ed. 1990). When the facts of a case sufficiently corroborate a rape victim's testimony, the probative value of evidence of prior consensual sexual conduct with the defendant is outweighed by the need to protect the victim's privacy.

Here, the State acknowledges "this case lacks the corroborating testimony of an examining physician." The State attempts to find corroborating evidence by relying on the facts and circumstances surrounding the incident. It points to noise in the room which a neighbor heard, the disarray of the apartment, the presence of defendant's and victim's clothing in the apartment, and victim running out of the apartment nude.

This evidence, however, is consistent with both defendant's and victim's account of the incident. The physical evidence does not clearly support either victim's or defendant's testimony. The testimony of the witnesses is substantially consistent with both characterizations of the incident. The medical evidence indicates nothing that would conclusively establish intercourse or forcible rape. There simply is no additional evidence that sufficiently corroborates either account. Where the testimony of victim and defendant conflicted it constituted merely a swearing match as to how each characterized the other's behavior.

Here, the key element of the State's case is victim's testimony. Under the facts and circumstances of this case, due process and the Sixth Amendment require that the evidence of prior consensual sexual intercourse be admitted on the issue of consent for consideration by the jury. The trial court abused its discretion by excluding the evidence.

## II. Denial of Motions to Suppress as Untimely

We briefly address defendant's second point. He alleges the trial court erred in denying his motion to suppress evidence and statements as untimely.

Rule 24.05 provides:

Requests that evidence be suppressed shall be raised by motion before trial; however, the court may in its discretion entertain a motion to suppress evidence at any time during trial.

This rule is substantially the same as § 542.296.3, which provides that a motion to suppress "shall be made before the commencement of the trial."

On February 7, 1990, defendant filed his motions to suppress. On the morning of trial, February 13, 1990, pretrial matters were taken up. The motions to suppress were brought to the trial court's attention. The trial judge overruled the motions "for being filed untimely and not having been taken up at the appropriate time."

In *State v. Brown*, 755 S.W.2d 749 (Mo. App.E.D.1988), the defendant moved to suppress his statement on the morning of trial. The trial court denied the motion as untimely. We held that the trial court's reason for denying the motion was erroneous. However, we observed:

Allowing a trial judge the right to establish a schedule for the filing and hearing of such motions could promote a more orderly trial procedure. Our Supreme Court Rules, however, do not presently grant such authority, at least as they relate to motions to suppress. Rule 24.05 requires only that the motion be filed "before trial."

*Id.* at 751. We again reiterate the desirability of the trial court having the authority to establish a schedule for the filing of motions to suppress.

In view of our disposition of defendant's first point, we need not determine whether

defendant was prejudiced by the denial of his motion.

The trial court's judgment is reversed and the cause is remanded.

CRANDALL, P.J., and PUDLOWSKI, J., concur.